UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No.  23cr10299 |
| | ) | |
| v. | ) | Violations: |
| | ) | |
| DEAN A. TRAN, | ) | Counts One - Twenty-Five: Wire Fraud |
| | ) | (18 U.S.C. § 1343) |
| Defendant | ) | |
| | ) | Counts Twenty-Six - Twenty-Eight: Filing a |
| | ) | False Tax Return |
| | ) | (26 U.S.C. § 7206(1)) |
| | ) | |
| | ) | Forfeiture Allegation: |
| | ) | (18 U.S.C. § 981(a)(1)(C) and |
| | ) | 28 U.S.C. § 2461) |

INDICTMENT

At all times relevant to this Indictment:

General Allegations

1.      The defendant, DEAN A. TRAN, was a resident of Fitchburg, Massachusetts.

   a.  From 2017 through 2020, TRAN served as an elected member of the Massachusetts State Senate, representing Worcester and Middlesex counties, which included Fitchburg.   TRAN formerly served as a Fitchburg City Councilor from approximately 2005 to 2017.  After losing the 2020 election, TRAN's term with the Massachusetts State Senate ended on or about January 5, 2021.

   b.  TRAN owned a two-family residence in Fitchburg, Massachusetts (the "Fitchburg Rental Property").

2.      The "Automotive Parts Company" was a New Hampshire-based retailer of automotive parts that hired TRAN as a consultant in March 2021 and later hired him as a company employee in September 2021.

1

3.      The Massachusetts Division of Unemployment Assistance ("DUA") is a state agency located in Boston, Massachusetts that administers unemployment benefits programs in the Commonwealth of Massachusetts.

4.      The Internal Revenue Service ("IRS") is an agency of the Department of the Treasury responsible for enforcing and administering the tax laws of the United States.  The IRS operates an IRS Service Center in Andover, Massachusetts.

5.      In 2021, after having lost re-election to the Massachusetts State Senate, TRAN fraudulently collected unemployment benefits by submitting false and fraudulent claims for unemployment while earning income as a consultant for the Automotive Parts Company.  TRAN obtained these unemployment benefits through the Pandemic Unemployment Assistance program established during the COVID-19 Pandemic.

6.      In 2020, 2021 and 2022, TRAN filed false and fraudulent tax returns with the IRS by materially underreporting his income.  In 2020, 2021 and 2022, TRAN willfully underreported income that he earned from the Fitchburg Rental Property.  In 2021, TRAN willfully omitted income that he earned as a consultant for the Automotive Parts Company.

**The Pandemic Unemployment Assistance Scheme to Defraud**

7.      From in or about March 2021 through in or about September 2021, TRAN devised a scheme to defraud DUA by filing false and fraudulent claims for pandemic unemployment assistance benefits while working for and collecting income from the Automotive Parts Company.

*Manner and Means of Scheme to Defraud*

8.     TRAN engaged in the following manner and means, among others, as part of the Pandemic Unemployment Assistance Scheme to Defraud:

      a.     filing false and fraudulent weekly certifications with DUA;

      b.     falsely reporting that he was not working and that he was not receiving other income;

      c.     falsely reporting that he was not able and available to work because of COVID-19;

      d.     sending invoices for consulting services to the Automotive Parts Company;

      e.     providing services to the Automotive Parts Company in exchange for compensation;

      f.     depositing checks from the Automotive Parts Company into his personal checking account; and

      g.     choosing to collect payment for services from the Automotive Parts Company as a consultant, as opposed to a W-2 wage earner, to conceal his income from DUA.

*Overview of Massachusetts Unemployment Insurance*

9.     In the Commonwealth of Massachusetts, Unemployment Insurance ("UI") benefits are funded by the UI Trust Fund, which is comprised of federal funds as well as monies obtained by state-imposed taxes on employers. DUA is responsible for administering the UI program in Massachusetts.

10.     In accordance with Massachusetts General Law, Chapter 151A, Section 6A, elected members of the State legislature are not eligible for UI benefits.

*Overview of Pandemic Unemployment Assistance*

11.     On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was signed into law. The CARES Act created a new temporary federal unemployment

insurance program called pandemic unemployment assistance ("PUA").   PUA provided unemployment benefits for individuals who were not eligible for UI or other types of unemployment (e.g., individuals who were self-employed, independent contractors, gig economy workers).   All COVID-19 UI claims, and PUA claims, were eligible to receive additional monies and additional benefit weeks from temporary federal programs created by the CARES Act. Eligibility for PUA claims was verified against quarterly earnings reports of W-2 wage earners provided by employers to the Commonwealth of Massachusetts.

12.      Along with the UI program, DUA administered and managed the PUA program in Massachusetts.  CARES Act program monies were received by DUA into a People's United Bank Account in Connecticut from the United States Treasury.  The monies paid to the claimants for these programs were transmitted via interstate wire communications from Connecticut to the claimant's designated bank account or the bank account for a Bank of America pre-paid debit card.

13.      To receive PUA benefits, Massachusetts claimants were required, as applicable, to (i) create an online account to submit the application (also known as PUA registration); (ii) provide eligibility criteria; (iii) provide the reason(s) for unemployed status (e.g., how COVID-19 affected employment); and (iv) certify that all the statements in the application were true, among other things.  PUA claims submitted online to DUA were processed via a server in Colorado.

14.      To continue to receive weekly PUA benefits, claimants were required to submit weekly certifications online to MA DUA that confirmed that the applicant (i) did not work during the weekly reporting period; and (ii) did not receive any income during the weekly reporting period. Weekly certifications submitted online to PUA were also processed via a server in Colorado.  It was material to MA DUA that it received truthful, complete, and accurate information from

applicants in the PUA registration, weekly certification, and eligibility verification process, so that PUA funds were disbursed to qualified and eligible recipients.

*TRAN Applies for UI Benefits and Is Rejected*

15.     On January 6, 2021, the day after his term ended with the Massachusetts State Senate, TRAN submitted an online application for UI benefits from the Commonwealth of Massachusetts.

16.     On March 12, 2021, the Commonwealth of Massachusetts notified TRAN that it had denied his UI claim.  TRAN's claim was denied because as a Massachusetts State Senator, he was not eligible for UI benefits under Massachusetts law.

*TRAN Starts Working for the New Hampshire Automotive Parts Company*

17.     On March 14, 2021, TRAN accepted a position as a consultant with the Automotive Parts Company.

18.     On March 16, 2021, TRAN signed an independent consulting agreement with the Automotive Parts Company (the "Consulting Agreement").   The terms of the Consulting Agreement provided that TRAN would earn $90 per hour providing services including, "scrum master expertise and agile methodology as it relates to projects within the software development teams and other ad hoc projects and processes."

19.     Also as part of the Consulting Agreement, TRAN agreed to timely file tax returns and make payments in connection with fees that he received for his consulting services:

> (c)     Consultant is solely responsible for, and will file, on a timely basis, all tax returns and payments required to be filed with, or made to, any federal, state or local tax authority with respect to the performance of services and receipt of fees under this Agreement. Prior to commencing any work under this Agreement, Consultant shall provide Client with a duly executed IRS Form W-9.

20.     The term of the Consulting Agreement was for three months until approximately June 16, 2021.  The Automotive Parts Company and TRAN agreed to extend the consulting arrangement, which ultimately concluded on or about September 17, 2021.  As a consultant, TRAN regularly sent invoices to the Automotive Parts Company using the names "DT Consulting Product and Project Consultant," "DT Consulting Product and Project Management," and "DT Consulting Agile and Scrum Management," and listed his personal residence as the address for DT Consulting.

21.     TRAN's invoices to the Automotive Parts Company showed that TRAN began performing consulting services as early as March 20, 2021.  TRAN's first invoice to the Automotive Parts Company was dated April 4, 2021, and billed the Automotive Parts Company for $5,355 in consulting services that TRAN claimed to have performed from March 20, 2021 to April 3, 2021.



**INVOICE**

**DT Consulting**
**Product and Project Consultant**

INVOICE # DT-1
DATE: 4/4/2021

DUE ON RECEIPT

BILL TO:

PAY TO:  Dean Tran
Fitchburg, MA 01420

| DATE | DESCRIPTION | HOURS | UNIT PRICE | LINE TOTAL |
|------|-------------|-------|------------|------------|
| March 20 | | .5 | $90/HR | |
| March 22-March 27 | | 31 | $90/HR | |
| March 28-April 3 | | 28 | $90/HR | |
| | | TOTAL 59.5 | TOTAL | $5,355 |

22.    Subsequent to September 17, 2021, TRAN began working as a W-2 employee of the Automotive Parts Company and began receiving regular paychecks, instead of working and being paid as a consultant on an invoice-basis pursuant to the Consulting Agreement.

*TRAN Applies For PUA Benefits*

23.    TRAN accepted the consulting position with the Automotive Parts Company on March 14, 2021.  The next day, on March 15, 2021, TRAN caused an online application to be submitted for PUA benefits.  Subject to administrative penalties, including penalties for perjury, TRAN checked the box stating that he was unemployed, partially unemployed or unable or unavailable to work because of the following COVID-19 reason:  "A child or other person in my household for which I am the primary caregiver is unable to attend school or another facility that is closed as a direct result of the COVID-19 public health emergency and such school or facility care is required for me to work."

24.    On March 16, 2021, DUA advised TRAN that he had been approved for PUA benefits until April 10, 2021 and further advised him that he must certify his eligibility for benefits every week:

> You must certify your eligibility **every week** to continue receiving benefits. Failure to certify each week will result in non-payment for that week.

25.    From March 2021 through December 2021, TRAN received the following total PUA payments and Automotive Parts Company payments (approximate totals by month):

| Month (2021) | PUA | Automotive Parts Company |
|---|---|---|
| March | $15,060[1] | n/a |
| April | $1,255 | n/a |
| May | n/a | $18,045 |
| June | $15,060 | $8,820 |
| July | $5,020 | $5,040 |
| August | $5,020 | $13,365 |
| September | $2,510 | $5,535 |
| October | n/a | $11,920 |
| November | n/a | $7,964 |
| December | n/a | $11,913 |
| **TOTALS** | **$43,925** | **$82,602** |

*DUA Suspends PUA Benefits to TRAN in April 2021*

26.     On April 9, 2021, the DUA issued TRAN a "Notice of Non-Monetary Issue Determination due to Employment Substantiation," denying TRAN's PUA claim and ceasing PUA payments to TRAN after April 7, 2021.

---

[1] Eligible PUA applicants could apply for and receive PUA benefits retroactive to January 2021.  In TRAN's March 2021 application for PUA benefits, TRAN applied for and received PUA benefits for weekly periods dating back from the week ending January 9, 2021 to the week ending March 13, 2021.

*TRAN Appeals PUA Suspension by Submitting Sham Employment Offer Letter to DUA and Making Other False Statements*

27.     On April 12, 2021, TRAN appealed the DUA's ineligibility determination.  As part of his appeal claim, TRAN submitted to the DUA an (i) appeal letter (the "Appeal Letter") and (ii) a sham employment offer letter, backdated to December 29, 2020, purporting to be from the Chief Executive Officer ("CEO") of a New Hampshire-based company that specialized in the production and retail distribution of Asian foods (the "Food Company"), offering TRAN employment with the Food Company at an annual salary of $120,000 (the "Food Company Offer Letter").

28.     TRAN also made false statements in his Appeal Letter, including as shown in the following excerpt:

> On April 12th, 2021 I filed an appeal online and has yet receive any notification.
> My situation has not changed and base on my situation and the information I have provided, the qualification and my eligibility under the PUA remains the same.

TRAN knew this statement to the DUA was false because by April 12, 2021, TRAN's employment situation had, in fact, changed in that TRAN was able to work and was working for the Automotive Parts Company by that time.

*TRAN Makes Misleading Statements and Conceals Material Facts at PUA Appeal Hearing*

29.     On May 21, 2021, TRAN participated in a recorded telephone hearing, under oath with a DUA Hearings Officer (the "PUA Appeal Hearing").  As part of the PUA Appeal Hearing, TRAN was asked about the Food Company Offer Letter.  TRAN testified under oath that: "I applied" and

"submitted my resume to an acquaintance" and that his resume "went to the CEO" and that he

"had a discussion with the CEO, as well as the, uh, the HR department."

30.     During the PUA Appeal Hearing, TRAN concealed from the Hearings Officer the fact that,

since as early as March 20, 2021, he had been working regularly as a consultant for the Automotive

Parts Company, and the fact that as early as May 4, 2021, he had begun receiving income from the

Automotive Parts Company.

*DUA Reinstates TRAN's PUA Benefits and TRAN Continues to Fraudulently Obtain PUA
Benefits*

31.     On June 9, 2021, the DUA issued a written decision reversing the previous denial of PUA

benefits to TRAN and ruled that TRAN was eligible for PUA benefits, "beginning the week ending

January 2, 2021, and indefinitely thereafter, if otherwise eligible."

32.     For periods including the week ending March 27, 2021 to the week ending September 4,

2021, TRAN submitted false weekly certifications to the DUA in order to receive PUA benefits

via direct deposit to his bank account (ending 9555) totaling approximately totaling $30,120, on

the approximate dates as shown below:

| DATE | AMOUNT | PAYER | W/E PERIOD |
|---|---|---|---|
| 03/31/2021 | $1,255 | MA DUA Cares Act | 03/27/2021 |
| 04/07/2021 | $1,255 | MA DUA Cares Act | 04/02/2021 |
| 06/10/2021 | $11,295[2] | MA DUA Cares Act | 04/10/2021 to 06/05/2021 |
| 06/16/2021 | $1,255 | MA DUA Cares Act | 06/12/2021 |
| 06/23/2021 | $1,255 | MA DUA Cares Act | 06/19/2021 |
| 06/30/2021 | $1,255 | MA DUA Cares Act | 06/26/2021 |
| 07/08/2021 | $1,255 | MA DUA Cares Act | 07/03/2021 |

---

[2] This figure consisted of 9 individual payments of $1,255 each for each of the week ending
periods from April 10, 2021 through June 5, 2021 – the period during which the DUA had
suspended PUA payments to TRAN.

| DATE | AMOUNT | PAYER | W/E PERIOD |
|---|---|---|---|
| 07/14/2021 | $1,255 | MA DUA Cares Act | 07/10/2021 |
| 07/21/2021 | $1,255 | MA DUA Cares Act | 07/17/2021 |
| 07/28/2021 | $1,255 | MA DUA Cares Act | 07/24/2021 |
| 08/04/2021 | $1,255 | MA DUA Cares Act | 07/31/2021 |
| 08/11/2021 | $1,255 | MA DUA Cares Act | 08/07/2021 |
| 08/18/2021 | $1,255 | MA DUA Cares Act | 08/14/2021 |
| 08/25/2021 | $1,255 | MA DUA Cares Act | 08/21/2021 |
| 09/01/2021 | $1,255 | MA DUA Cares Act | 08/28/2021 |
| 09/09/2021 | $1,255 | MA DUA Cares Act | 09/04/2021 |
| **TOTAL** | **$30,120** | | |

33.     TRAN falsely and fraudulently obtained these PUA benefits because (a) he claimed to not be working on the weekly certifications, but he was in fact working for the Automotive Parts Company; (b) he claimed to not be earning income on the relevant weekly certifications, but the Automotive Parts Company had started making payments to him starting as early as April 22, 2021; and (c) he claimed that COVID-19 prevented him from working, but he was working for the Automotive Parts Company as early as March 20, 2021.

34.     As one example, on September 5, 2021, TRAN caused a false certification to be submitted to the DUA that represented that he did not work and that he did not receive any income for the week ending Saturday, September 4, 2021, by selecting "No" to the queries below:



35.     TRAN knew this certification was false because on the same date, September 5, 2021, TRAN had prepared an invoice to the Automotive Parts Company that detailed the work that

11

TRAN had performed during the week ending September 4, 2021, and the pay[3] that he was owed

for such services:



*PUA Benefits End and TRAN Is Hired as Employee of the Automotive Parts Company*

36.     On August 4, 2021, the DUA notified TRAN by letter that PUA benefits were terminating

following the week ending September 4, 2021.  TRAN's final PUA payment was on September 9,

2021.

---

[3] On September 16, 2021, the Automotive Parts Company issued a check to TRAN for $5,535, which included payment for the $3,330 invoice (DT-12), below, and an earlier TRAN invoice for $2,205 (DT-11).

37.     On September 20, 2021, following the termination of PUA benefits, TRAN was hired as a W-2 employee of the Automotive Parts Company, with the title, senior scrum manager.

38.     TRAN's status as an Automotive Parts Company employee, as opposed to a consultant, afforded him numerous benefits that he was not qualified for before, including health insurance, life insurance, and participation in the company's retirement plan, among other benefits.

39.     If TRAN had become a W-2 employee of the Automotive Parts Company prior to September 2021, however, TRAN's wages would have been reported to the state and, thus, the DUA would have disqualified TRAN from receiving PUA benefits.  By remaining as a consultant for the Automotive Parts Company until early September 2021, TRAN was able to conceal his employment from the DUA while he simultaneously collected both pay from the Automotive Parts Company and PUA benefits.

### False and Fraudulent Tax Returns

*Background Regarding Tax Returns and TRAN's Filing History*

40.     IRS Form 1040 is used by taxpayers to file an annual income tax return.  On the Form 1040, taxpayers can choose a filing status including "Single," "Married filing jointly," and "Married filing separately," among others.

41.     Schedule E is that form attached to a Form 1040 used to report income or loss from rental real estate, among other types of income or losses.

42.     Since at least 2017, and for calendar years 2017, 2018, 2019, 2020, 2021 and 2022, TRAN and his wife filed Forms 1040, with a filing status, "Married filing jointly." For each tax return, TRAN electronically transmitted the returns to the IRS using a third-party tax preparation program.

*The Fitchburg Rental Property*

43.    In 2020, 2021 and 2022, TRAN rented each of the two units in the Fitchburg Rental

Property to other individuals.  In each of 2020, 2021 and 2022, TRAN filed a Schedule E with his

tax returns to show rental income, as well as ordinary and necessary expenses like repairs supplies,

and utilities, among other items.

44.    Individuals who rented from TRAN paid by personal check, which TRAN deposited into

his bank account ending 9555.

45.    In 2020, 2021 and 2022, TRAN and his wife filed joint Form 1040 - United States

Individual Income Tax Returns (the "2020 Tax Return, the "2021 Tax Return, and the "2022 Tax

Return").  TRAN did not report all of the income that he earned from the Fitchburg Rental Property

on these tax returns:

      a.  On the 2020 Tax Return, TRAN reported $14,100 in gross rental income.  TRAN's bank records show that he actually earned gross rental income of approximately $27,544 in 2020 for the two units in the Fitchburg Rental Property.  Therefore, TRAN underreported rental income by approximately $13,444 in 2020.  Despite having two different units, TRAN reported only the approximate income received in 2020 for one of the units, not both units.

      b.  On the 2021 Tax Return, TRAN reported $15,600 in gross rental income.  However, in 2021, TRAN actually earned gross rental income of approximately $30,855. Therefore, TRAN underreported rental income by approximately $15,255 in 2021. In 2021, TRAN again reported only the approximate income received for one of the units, not both units.

      c.  On the 2022 Tax Return, TRAN reported $15,600 in gross rental income.  However, in 2022, TRAN actually earned gross rental income of approximately $31,200. Therefore, TRAN underreported rental income by approximately $15,600 in 2022. In 2022, TRAN again reported only the approximate income received for one of the units, not both units.

14

*Material Omission of Automotive Parts Company Income from Tax Return*

46.    TRAN's 2021 Tax Return was also materially false and fraudulent in that TRAN did not report any of the $54,720 in income that he earned as a consultant for the Automotive Parts Company.

COUNTS ONE – TWENTY-FIVE
Wire Fraud
(18 U.S.C. § 1343)

The Grand Jury charges:

47.    The Grand Jury re-alleges and incorporates by reference paragraphs 1-39 of this Indictment.

48.    On or about the dates listed below, in the District of Massachusetts, and elsewhere, the defendant,

DEAN A. TRAN,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds for the purpose of executing the scheme to defraud, as set forth below:

| Count | Approximate Date of Certification | Weekly Certification of PUA Claim |
|-------|-----------------------------------|-----------------------------------|
| 1 | 3/21/2021 | Weekly Claim for Period 20-Mar-2021 |
| 2 | 3/28/2021 | Weekly Claim for Period 27-Mar-2021 |
| 3 | 4/4/2021 | Weekly Claim for Period 3-Apr-2021 |
| 4 | 4/11/2021 | Weekly Claim for Period 10-Apr-2021 |
| 5 | 4/18/2021 | Weekly Claim for Period 17-Apr-2021 |
| 6 | 4/25/2021 | Weekly Claim for Period 24-Apr-2021 |
| 7 | 5/2/2021 | Weekly Claim for Period 01-May-2021 |
| 8 | 5/9/2021 | Weekly Claim for Period 08-May-2021 |
| 9 | 5/16/2021 | Weekly Claim for Period 15-May-2021 |
| 10 | 5/23/2021 | Weekly Claim for Period 22-May-2021 |
| 11 | 5/30/2021 | Weekly Claim for Period 29-May-2021 |

| Count | Approximate Date of Certification | Weekly Certification of PUA Claim |
|---|---|---|
| 12 | 6/6/2021 | Weekly Claim for Period 05-Jun-2021 |
| 13 | 6/13/2021 | Weekly Claim for Period 12-Jun-2021 |
| 14 | 6/20/2021 | Weekly Claim for Period 19-Jun-2021 |
| 15 | 6/27/2021 | Weekly Claim for Period 26-Jun-2021 |
| 16 | 7/04/2021 | Weekly Claim for Period 03-Jul-2021 |
| 17 | 7/11/2021 | Weekly Claim for Period 10-Jul-2021 |
| 18 | 7/18/2021 | Weekly Claim for Period 17-Jul-2021 |
| 19 | 7/25/2021 | Weekly Claim for Period 24-Jul-2021 |
| 20 | 8/01/2021 | Weekly Claim for Period 31-Jul-2021 |
| 21 | 8/08/2021 | Weekly Claim for Period 07-Aug-2021 |
| 22 | 8/15/2021 | Weekly Claim for Period 14-Aug-2021 |
| 23 | 8/22/2021 | Weekly Claim for Period 21-Aug-2021 |
| 24 | 8/29/2021 | Weekly Claim for Period 28-Aug-2021 |
| 25 | 9/05/2021 | Weekly Claim for Period 04-Sep-2021 |

All in violation of Title 18, United States Code, Section 1343.

COUNTS TWENTY-SIX – TWENTY-EIGHT
Filing a False Tax Return
(26 U.S.C. § 7206(1))

The Grand Jury further charges:

49.     The Grand Jury re-alleges and incorporates by reference paragraphs 1-46 of this Indictment.

50.     On or about dates set forth below, in the District of Massachusetts, and elsewhere, the defendant,

DEAN A. TRAN,

did willfully make and subscribe a U.S. Individual return, for the calendar years set forth below, each of which was verified by a written declaration that it was made under the penalties of perjury, and which was filed with the Director, Internal Revenue Service, and each of which the defendant did not believe to be true and correct as to every material matter in that each return understated defendant's total income, as a result of which each return understated the amount of taxes due and owing for that year.

| Count | Calendar Year | Approximate Filing Date |
|-------|---------------|-------------------------|
| 26 | 2020 | 5/17/2021 |
| 27 | 2021 | 4/18/2022 |
| 28 | 2022 | 4/11/2023 |

All in violation of Title 26, United States Code, Section 7206(1).

FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

The Grand Jury further finds:

1.      Upon conviction of one or more of the offenses in violation of Title 18, United

States Code, Section 1343, set forth in Counts One through Twenty-Five, the defendant,

DEAN A. TRAN,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C),

and Title 28, United States Code, Section 2461(c), any property, real or personal, which

constitutes or is derived from proceeds traceable to the offenses.  The property to be forfeited

includes, but is not limited to, the following asset:

        a.  $30,120, to be entered in the form of a forfeiture money judgment.

2.      If any of the property described in Paragraph 1, above, as being forfeitable

pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code,

Section 2461(c), as a result of any act or omission of the defendant --

        a.  cannot be located upon the exercise of due diligence;

        b.  has been transferred or sold to, or deposited with, a third party;

        c.  has been placed beyond the jurisdiction of the Court;

        d.  has been substantially diminished in value; or

        e.  has been commingled with other property which cannot be divided without
            difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c),

incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other

property of the defendant up to the value of the property described in Paragraph 1 above.

19

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

A TRUE BILL

FOREPERSON

_____

JOHN T. MULCAHY
DUSTIN CHAO
ASSISTANT UNITED STATES ATTORNEYS
DISTRICT OF MASSACHUSETTS

District of Massachusetts: November _16_, 2023
Returned into the District Court by the Grand Jurors and filed.

/s/ Leonardo T. Vieira, signed at 12:38pm
DEPUTY CLERK

21