UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 23-cr-10299-FDS |
| | ) |
| DEAN A. TRAN, | ) |
| | ) |
| Defendant | ) |
| | ) |

**GOVERNMENT'S OPPOSITION TO**
**DEFENDANT'S POST-TRIAL MOTION #1 RENEWED MOTION TO ACQUIT**

The United States of America, by and through the undersigned assistant United States Attorneys, hereby opposes defendant Dean A. TRAN's Post-Trial Motion #1 Renewed Motion to Acquit (ECF Dkt. No. 123 (hereinafter, the "Defendant's Motion")). Contrary to the defendant's assertions, the quantum of proof against him was more than sufficient to satisfy each element of the crimes charged in the indictment, and no rational factfinder — especially viewing the evidence in the light most favorable to the prosecution — could find otherwise.

For those reasons stated below, the government respectfully requests that the motion be denied.

**ARGUMENT**

**I.    Rule 29 Standard.**

The Defendant's Motion should be denied because the evidence — especially when taken in the light most favorable to the government — was more than sufficient to prove TRAN guilty beyond a reasonable doubt of the elements of the crimes with which he was charged.

To prevail on a Rule 29 motion, "a defendant must 'show that the evidence presented at trial, even when viewed in the light most favorable to the government, did not suffice to prove the elements of the offenses beyond a reasonable doubt.'" *United States v. Vavic*, 628 F. Supp.3d 330,

358 (D. Mass. 2022) (quoting *United States v. Acevedo*, 882 F.3d 251, 257 (1st Cir. 2018)). The "jury's verdict must be upheld, unless viewing the evidence in this manner, no rational jury 'could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

## II. The Court did not err in giving the *Allen* charge.

### a. Factual Background

A little more than eight hours into jury deliberation, jurors returned a question reading, "If the jury cannot reach an agreement about some or not all counts, what will the outcome of the trial be?" In response to this, the Court gave the jury an *Allen* charge.

> "Let me start by saying as to any particular count, you can vote to acquit or convict as you see fit or you may not reach agreement. If you have made a decision, a unanimous decision, on some but not all counts, you should report that on the jury form.
>
> As to the remaining counts, that is, if there are counts that you cannot reach agreement, I'm going to instruct you to go back and resume your deliberations with some instructions. At the end of the day, if you are not able to reach agreement as to some of the counts, you should leave that part of the verdict form blank and just report that you can't reach agreement as to those counts."

*Day 7 Transcript*, at 6–7. The First Circuit model *Allen* charge followed. *Id.* at 7–9; *see* First Circuit Pattern Jury Instructions, FEDCRIM-JIC 6.06. Ultimately, jurors found TRAN guilty on 23 counts and they could not reach a verdict on five counts.

### b. Defendant's motion misrepresents First Circuit precedent on *Allen* charges.

The defendant claims that the *Allen* charge given by the Court was given in error. However, the defendant's understanding is based on an erroneous reading of *United States v. Manning*, 79 F.3d 212 (1st Cir. 1996).

2

Defendant's motion selectively quotes portions of *Manning* in order to claim that *Allen* charges are inappropriate when the jury poses a hypothetical. However, that reading is far from accurate. In *Manning*, the court held that a response offering to review testimony wrongly suggested that jurors must deliberate until a verdict is reached. *Id.* at 222 ("This response not only failed to discourage the notion that the jury was bound to continue to deliberate indefinitely, it suggested the opposite, i.e., that a jury is required to do so.").

What the defense fails to mention is that the instruction given in *Manning* was not an *Allen* charge. In fact, the court in *Manning* goes so far as to note that "[p]roviding a modified Allen charge at this juncture, on the other hand, would have informed the jurors that they need not surrender an honest conviction for the mere purpose of returning a verdict" and would have been appropriate. *Id.* at 222 n.11.

### c. The *Allen* charge followed circuit precedent.

Defendant's motion claims that the *Allen* charge "was a grave and prejudicial error" and that it may prejudice a jury against being hung. However, given the facts of this case, that account is far from the truth. The Court's charge is identical to the model charge. *Compare Day 7 Transcript*, at 7–9, *with* First Circuit Pattern Jury Instructions, FEDCRIM-JIC 6.06. The language of this charge was upheld as constitutional in *United States v. Nichols*, 820 F.2d 508, 511–12 (1st Cir. 1987).

Furthermore, the subsequent proceedings underscore the lack of coercion created by the *Allen* charge. The jury did not reach a verdict on five counts, even after receiving the *Allen* charge. This means that the jury did not misinterpret the *Allen* charge to require a verdict. "The instruction was carefully phrased so that '(1) the onus of reexamination would not be on the minority alone

...; (2) a jury would not feel compelled to reach agreement ...; and (3) jurors would be reminded of the burden of proof.'" *Id.* at 112 (quoting *United States v. Angiulo*, 485 F.2d 37, 39 (1st Cir. 1973)).

The jury had deliberated for eight hours at the time they asked the question. After receiving the *Allen* charge, the jury deliberated for another hour and a half. The timing of the charge does not make it coercive. *See United States v. Rengifo*, 789 F.2d 977, 985 (holding that a jury given a modified *Allen* charge after seven and a half hours of deliberation and the verdict being returned two hours later does show that the charge was coercive); *United States v. Hernandez-Albino*, 177 F.3d 33, 39 (1st Cir. 1999) (collecting cases where post-*Allen* charge deliberations of an hour or less counseled against coercion).

Furthermore, the wording of the jury's original question strongly suggests that giving the *Allen* charge was a harmless error at most. The jury's question inquired about what would happen if they could not "reach an agreement about some or not all counts." Nothing in this question indicates that at the time of the question the jury was hung on all counts. Instead, the plain language suggests that the jury had reached a verdict on some of the charges prior to asking the question.

Given the evidence presented at trial and the resulting jury verdict, it is clear that the *Allen* charge was not sufficiently prejudicial for acquittal to be granted on Rule 29 review. *See Hernandez-Albino*, 177 F.3d at 38–39 (finding an *Allen* charge to not be coercive where there was significant deliberation and consistent verdict); *see also United States v. Amaro-Santiago*, 824 F.3d 154, 164 (1st Cir. 2016) (holding that even if the *Allen* charge supplemental language was in

error, there is no evidence of coercion given the length of deliberations and lack of evidence of coercion). The evidence in this case counsels against a finding of coercion.[1]

### III.     The Court gave an appropriate reasonable doubt instruction.

The reasonable doubt instruction given by the Court adheres to the First Circuit standard. The first portion of the Court's instruction only contains an unsubstantial variation from the model jury instruction. *Compare Day 6 Transcript*, at 123–24, *with see* First Circuit Pattern Jury Instructions, FEDCRIM-JIC 3.02.  The second portion of the reasonable doubt instruction explains reasonable doubt as the Honorable Robert Keeton, United States District Judge for the District of Massachusetts, did, a formulation which has been upheld by the First Circuit. *See* First Circuit Pattern Jury Instructions, FEDCRIM-JIC 3.02 cmt. 4.

Furthermore, the Defendant's Motion argues that the Court should have given a *Webster* instruction.  That argument fails chiefly because *Commonwealth v. Webster*, 5 Cush. 295 (Mass. 1850) is a state case which in no way binds this Court.  That this case was praised by the California Supreme Court and upheld by the United States Supreme Court is irrelevant here. *See People v. Strong*, 30 Cal. 151, 155 (Cal. 1866); *Victor v. Nebraska*, 511 U.S. 1, 9 (1994).  Here, First Circuit precedent controls. Since the jury instructions given by this Court align with circuit precedent, they can hardly be said to be inadequate. *See United States v. Cleveland*, 106 F.3d 1056, 1062–63 (1st Cir. 1997) (upholding a jury instruction nearly identical to the one at issue here).

---

[1] The defendant also argues that *Allen* charges are unconstitutional. He cites Third Circuit case law to make this argument. However, the First Circuit has not joined the Third Circuit in finding *Allen* charges to be plainly unconstitutional. *See Amaro-Santiago*, 824 F.3d at 164.

Moreover, the Supreme Court has established that the inquiry into whether a jury instruction is proper "is whether there is a reasonable likelihood that the jury *did* apply it" "in an unconstitutional manner." *Victor v. Nebraska*, 511 U.S. 1, 6 (1994). Therefore, it is irrelevant to the Court's analysis whether the instruction given was the defendant's "preferred iteration." In addition, the actual instruction given was sufficiently defendant friendly. *Compare Day 6 Transcript*, at 124–25, *with United States v. Rodriguez*, 735 F.3d 1, 12 & n.4 (1st Cir. 2013). In *Rodriguez,* the court declared the burden of proof needed to prove an instruction was erroneous to be a "high hurdle." *Id.* at 12 ("[W]e will nevertheless sustain a conviction if we find that the result would quite likely have been the same had the erroneous instruction not been included.") (internal citations and quotations omitted).

The Defendant's Motion fails to sufficiently prove that the actual jury instruction, though upheld in previous cases, was in this case prejudicial such that it changed the outcome of the case.

## IV.     There was sufficient evidence of interstate transmission.

The third prong of wire fraud—"the use of interstate wire communications in furtherance of the scheme"— was clearly satisfied by the evidence of his use of an interstate wire. *United States v. Buoi*, 84 F.4th 31, 38 (1st Cir. 2023) (internal quotations omitted) (citing *United States v. Cassiere*, 4 F.3d 1006, 1011 (1st Cir. 1993)).  The use of the internet to submit the weekly certifications means it was foreseeable to the defendant that an interstate wire was used.  Trial Exhibit 39 included the online sequences that the defendant clicked through in relation to his Pandemic Unemployment Assistance ("PUA") claim.  Similarly, the weekly certifications clearly stated at the top that "eServices," i.e. the internet was used to file the certifications.  *See* Exhibit 24.

The instruction the Court gave to the jury is that "the government must prove that the defendant knew or reasonably could have foreseen that the use of a interstate wire communication would follow in the course of the scheme." *Day 6 Transcript*, at 136–37.  During defendant's interview with the DUA hearings officer, Debra Lerner, he indicated approximately twelve times that documents were "uploaded" to the DUA website, and thus filed online.  *See* Exhibit 22.  Moreover, TRAN is a tech savvy man, with experience working in e-commerce for 1A and as a quality assurance manager for the Avid Technologies.   It was reasonable for the jury to find that an internet submission required the use of an interstate wire and that the use of interstate wire was foreseeable to TRAN given his statements, background and relative sophistication.  The government has made a sufficient showing that an actual interstate wire communication occurred and that the use of an interstate wire would have been reasonably foreseeable to the defendant.

V.     **The Defendant's misrepresentations constituted wire fraud**

Wire fraud focuses on the falsehoods used to gain money or property, not whether the money or property could have been obtained absent the falsehood. *See United States v. Buoi*, 84 F.4th 31, 38 (1st Cir. 2023) (citing *United States v. Cassiere*, 4 F.3d 1006, 1011 (1st Cir. 1993)). As established in the Indictment, each week that TRAN received PUA benefits, he certified that he did not work and did not earn income, and that COVID-19 prevented him from working. Indt. ¶ 33–34 (Dkt. No. 1). It is those falsehoods which serves as the basis for the wire fraud charges.

The defendant speculates that even if TRAN had disclosed his earning as a contractor, he would have been eligible for PUA.  However, that argument is irrelevant to the case. As discussed, fraudulent certifications are the basis for the wire fraud charges. Therefore, it matters not whether TRAN's income from his contracting gig was sufficiently low enough to receive PUA because the benefits he did receive were obtained under false pretenses.

It is similarly speculative and irrelevant to claim that TRAN could have received benefits under other eligibility criteria. As detailed above, the selection of the criteria is only relevant to the case in as much as it is a falsehood. TRAN's potential eligibility holds no bearing on the fact that the benefits he received were obtained fraudulently.

Moreover, the defendant errs in describing the government's case as existing solely on omission. Each week that TRAN certified his PUA benefits, he was affirmatively stating that the application was true. The government has provided evidence proving that TRAN was certifying that he had not worked or earned income in a given week for 25 weeks during which he was working. This is not a mere omission, as the defendant characterizes it, but instead an affirmative misrepresentation for which the jury could utter a conviction.

The First Circuit application of the fraud statute is broader than common law fraud, but even the narrow definition at common law recognizes a misrepresentation of fact as sufficient evidence of a scheme to defraud. *See McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 791 (1st Cir. 1990) ("We recognize that the scope of fraud under these statutes is broader than common law fraud, and that no misrepresentation of fact is required in order to establish a scheme to defraud."). It is sufficiently clear that the affirmative weekly certifications made by the defendant make the charges appropriate.

### VI. The Defendant received a fair trial by a jury representative of a cross-section of the community.

The defendant claims that he was denied a fair trial by a jury representative of a cross-section of the community given the racial composition of the jury. The defendant's argument is without merit. First, the defendant's claim that the government improperly challenged jurors on

the basis of race was not raised at trial. Therefore, the claim stands unpreserved and waived by the defendant.

To assert a prima facie case of purposeful discrimination in jury selection "the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race." *Batson v.* Kentucky, 476 U.S. 79, 96 (1986) (citations omitted);   *See United States v. Pulgarin*, 955 F.2d 1, 2 (1st Cir. 1992) (finding no objection to be made when defense counsel stopped short of making an objection at a bench trial during voir dire).

Here, the *Batson* objection was not raised during the voir dire process. Prior to the start of jury selection, the defendant raised an advisory warning that the jury pool may be racially unrepresentative. *Day 1 Transcript*, at 6 ("And the second argument we're going to make, this is a little—this is sort of more advisory, is that we anticipate that the jury pool will not adequately reflect a racial cross-section of Mr. Tran's background, so we ask the Court to take notice of that and, we'll be watching that as we seat the jurors."). No further mention of the racial composition of the jury was made during voir dire, and no formal *Batson* claim was made. Therefore, the claim is not preserved. *United States v. Charlton*, 600 F.3d 43, 50 (1st Cir. 2010) (quoting *United States v. Girouard*, 521 F.3d 110, 115 (1st Cir. 2008) ("We . . . apply plain error review to unpreserved *Batson* claims. . . .").

Furthermore, the defendant must show that the government used the practice of peremptory challenges "to exclude veniremen from the petit jury on account of their race." *Id.* Defendant has offered no evidence of questions asked during jury selection which support his inference on discrimination. *See id.* at 97. Indeed, of the five individuals for which the government exercised peremptory challenges (Juror Numbers 5, 23, 36, 44 and 45),  five of them were Caucasian. Juror

45 was the only person of color challenged by the government and there was a non-race based reason for that juror's exclusion as Juror Number 45 claimed to have been "wrongfully arrested, convicted and sentenced for a crime that [he] didn't commit." Juror Number 45 also advised the Court had he had "mixed feelings" about law enforcement. *Day 1 Transcript,* at 90.

Moreover, the defendant's argument is also infirm because the defendant himself excluded people of color from the jury, a fact that he neglects to mention in his memorandum. The defendant excluded Juror Number 31, who appears to be a Middle Eastern male, and Juror Number 46, who appears to be an Asian female. *Day 1 Transcript,* at 112-113, 117

                        Respectfully submitted,

                        JOSHUA S. LEVY
                        Acting United States Attorney

By:    */s/ John T. Mulcahy*
       John T. Mulcahy
       Dustin Chao
       Assistant U.S. Attorneys

Date: October 18, 2024

## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non- registered participants.

      By:    */s/ John T. Mulcahy*
                  John T. Mulcahy

Date:  October 18, 2024