United States of America
District of Massachusetts

Suffolk, ss.

| United States |
| v. |
| Dean Tran |

Docket No. 23-CR-10299-FDS

Defendants' Sentencing Memorandum

**<u>Who Is Dean Tran</u>**

Dean Tran is a 50 year old male of Vietnamese descent. He an American Citizen and his family fled the communist regime in Vietnam. Between 2017 and 2021 he was a Republican State Senator from Fitchburg. Before this he served as a Fitchburg City Councilor for a number of years.

Mr. Tran holds a Bachelors Degree. He is married and has three dependents. One of his children is of college-age, on is in 10th grade and one is in 7th grade. One of his children suffers from a serious medical condition. Mr. Tran's wife, primarily a home-maker, does have employment (part time) with the school system. Mr. Tran is the bread-winner for his family and has always been.

Mr. Tran currently works as a quality manager for an autoparts store. Previous to his Senate term, Mr. Tran worked for a computer company.

Mr. Tran is an entrepreneurial spirit. He has taught that spirit to his children, as disclosed at the trial. Mr. Tran, having worked since he was 19, is an industrious sort. He successfully bought his childhood home as an investment property before he was 21.

He is a dedicated fixture of his community. He is a youth sports coach. He has a strong and deep commitment to educational programming in his community.

Mr. Tran is politically active and civic minded. He is also a dedicated and sincere member of his congregation. Attached herewith is a recommendation letter from his Pastor. He and his siblings keep in touch with the Catholic priests who assisted the family in escaping Vietnam.

Mr. Tran is also a dedicated uncle. He regularly provides presents and emotional connection to his nieces and nephews.

In general, Mr. Tran is the posterchild of a family man. Self-made, he stands on his own two feet, and teaches his children to do the same. He has worked his entire adult life. He provides extensive support and educational and moral guidance to his children.

Mr. Tran also labors with some mental issues. Included herewith is a letter of support from his social worker, including confirmation of Mr. Tran's PTSD diagnosis.

**Defendant's Sentencing Guideline Calculation Notes**

**Tax Returns**

U.S.S.G. §2T1.1(a)(2)  Offense level 6 (no tax loss)

===Constitutional objection to application of U.S.S.G. §2T1.1(c)(1)(A). Under Apprendi v. New Jersey, 530 U.S. 466 (2000), and its progeny, any fact which increases a sentence must be submitted and be decided upon by a jury. The jury was specifically instructed that "The government does not have to prove that there was a tax due and owing for the years in issue." *Tr. 6-139.* The Court also paused in the middle of witness examination to specifically tell the jury that "the government does not have to prove that any actual tax was owing to prove the tax crime with which he is charged." *Tr. 5-59.* The verdict form did not request or ask the jury to make any finding of actual loss. The jury did not determine any loss amount by the government. Considering

how they were instructed, that no finding of loss was required for this particular crime, there is no verdict or finding by the jury. They were specifically not asked for such a finding. Since the amount of loss apparently makes a significant difference in sentencing, the Court must treat this as a case in which there is no tax loss. Where the Defendant made specific objections to the <u>Silverstein</u> case and to instructions which told the jury they need not find loss, the Court cannot proceed on the contested facts about loss—especially not found by the jury.[1]

===The Court should, under the sentencing guidelines, credit Mr. Tran all the deductions and exemptions he was fairly entitled to. U.S.S.G. §2T1.1 comment 3. Based on the accompanying tax calculations, made by the Defendant's accountant witness Mr. Terranova, the Defendant argues that if given the deductions he was entitled to, the Government suffered no loss. The Government suffered no loss and Mr. Tran cannot be sentenced as if there was loss.

====Both these arguments also hold true for any finding of Fines or Special Assessment that would multiply the loss to arrive at a fine.

**Wire Fraud**

Offense Conduct
§2B1.1(a)(1) ---Offense Level 7
§2B1.1(b)C)----Add 4   (loss >$15K but <$40K)[2]

Offense Level 11 (unless the loss objection is sustained, in which case is the level is 7. Resulting in a Zone A sentence, recommended of 0-6 months).

No Criminal History Points.

---

[1] The argument about the Jury being required to find loss also holds true for the Wire Fraud counts.
[2] But See Note 1.

U.S.S.G. Sentencing Table C.5, pt.A produces a Zone B, Cat.1, recommended sentenced of 8-14 months.[3]

**\*\*** Here the Defendant objects strongly to the Probation calculation as wrong. In addition to related objections about loss calculations, the Defendant objects to ¶56 of the PSI giving a 6 point enhancement for loss more than $40,000 but less than $90,000. This relies on the inclusion of approximately $7K in benefits received during weeks which the Jury **did not** convict the Defendant, being unable to reach a verdict on Counts 1-5. If the money for weeks for which the Defendant was not convicted are removed (as in the Defendant's calculation) paragraph 56 is erroneous and the offense level is lower by 6 points and materials changes from a Zone D offense (probation ineligible) to a Zone B offense and maybe even a Zone A offense.

In addition to the objections above, the Defendant objects that the PSI report includes within loss and restitution numbers, payments during weeks which the jury did not reach a verdict on. This is the same constitutional objection as holding acquitted conduct against a defendant. It is fundamentally unfair, contrary to the efficacy of the jury right, and contrary to due process.

The Government is also guilty of piling on. The Government sliced the indictment by week instead of focusing on the alleged scheme. Despite the benefit of prosecutorial discretion, the Government cannot benefit in sentencing from slicing the baloney sidewise instead of lengthwise. It would constitutionally accord the executive too much power and deprive the Defendant of his right to the constitutional protection of the judiciary.

**Potential Downward Departures**

---

[3] Here the Defendant's calculation diverges from Probation's. The Defendant calculates a Zone B sentence, under the 2024 U.S.S.G., for the conduct here. Probation calculates a Zone D sentence. This affects (1) the sentencing range and (2) the potential eligibility, under the Guidelines, for a probation non-incarcerative sentence.

2B1.1 comment (n.21(C)) – "in a case in which the offense level substantially overstates the seriousness of the offense." The offense is, in this case, significantly overstated. Mr. Tran, as the jury found, is alleged to have received monies from PUA program for 20 weeks. During the first period he was genuinely unemployed.[4] In the second period, the Defendant was employed part-time, which, as the Defense argued strenuously, was still eligible for

**Objection to Obstruction Enhancement**

The Defendant objects to any obstruction of justice enhancement, on both constitutional grounds and on grounds covered by the Sentencing Guidelines. The Sentencing Guideline objections are:

---§3C1.1 comment 2 "In applying this provision in respect to alleged false testimony or statements by the defendant, the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice"

----§3C1.1 comment 5(B) "<u>Example of conduct not ordinarily covered</u>, Some types of conduct do not warrant application of this adjustment…However, if the defendant is convicted of a separate count for such conduct, this adjustment will apply…(B) making false statements, not under oath, to law enforcement officers, unless Application Note 4(G) above applies."

---

[4] This was a point of the defendant's affirmative case to the jury. It is also in the opinion of defense counsel, a likely reason for the jury's inability to reach a verdict on Counts 1-5 of Wire Fraud.

>----§3C1.1 comment 7. "Inapplicability of adjustment to certain circumstances. If a defendant is convicted of an offense covered [obstruction or perjury], this adjustment is not to be applied to the offense level for that offense…."

The Defendant's alleged obstruction, the focus of another hotly contested indictment, cannot be used to enhance his sentence. It is, in the Defendant's mind, already constitutionally objectionable that such evidence was used to convict him of the underlying offense. However, if the Defendant were to be sentenced on obstruction it would definitively violate double jeopardy. The Defendant would suffer the ignominity of being punished in this case for the same conduct, on the same evidence, that he will now be forced to defend himself, again, against.

**<u>Downward Departures</u>**

- The Defendant is entitled (and probation agreed) to the 2 point deduction in §4C1.1(a) as a zero point offender.
- The Defendant should be granted to a departure based on §5H1.6 comment 1(b) regarding loss of caretaking and financial support. The Defendant is the breadwinner in his family. His wife has a part-time position with the schools, but has been a home-maker predominant and has worked intermittently during the marriage. The Defendant's support of his family is irreplaceable. He has managed to find employment with a supportive employer, following his public service, but given the notoriety of his case he will be unlikely to obtain white-collar employment in any format.
- **(Partial Necessity/Duress)** The Defendant should be entitled to a downward departure based on §5K2.12 (policy statement). In cases where a defendant acts

under pressures, not amounting to a complete legal defense, that mitigate the conduct, a departure may be justified. In this case, as the Defendant's evidence before the jury suggested, necessity drove the conduct at issue. Mr. Tran is the breadwinner who was unsuccessful at a job search and needed to feed and house his family. Faced with devasting losses to his family, Mr. Tran obtained government assistance. Not amounting to a complete defense, the conduct is nonetheless mitigated by pressing need. The decision is, if not forgivable, at least understandable.

- **(Lesser Harm)** The Defendant should be granted a downward departure based on §5K2.11 (policy statement). Where a Defendant acts to avoid a greater harm, or where the conduct does not traverse the evil the law seeks to prevent, a lesser sentence may be warranted. Here the Defendant's conduct prevented his homelessness or devasting impact to his family, even including food insecurity or deprivation. Like the classic thief who steals a loaf of bread to feed his family, Mr. Tran was in a box driven by necessity and need. The Wire Fraud Statute is not intended to stop this conduct, but to protect innocent consumers from fraud.

**<u>Proposed Sentence</u>**

The Defendant proposes a sentence of probation of 2 years, with 5 months of home confinement. The Defendant maintains that he is eligible for a probation sentence, under the sentencing guidelines. This sentence would be just. It is commensurate with similar sentences given to defendants in this district who have been convicted of similar conduct.

The Defendant argues that this kind of sentence is fair for the conduct at issue here. In the event that the Guidelines do not extend eligibility for probation, the Court should give a non-guideline sentence.

**Supplemental Notes about the PSI Report By Paragraph – Of Defendant**

9. The Senate Ethics investigation is not relevant to any matter here.

13. Any full-time offering was not permanent. The current role as a Sr Scrum Master was temporary. Mr. Tran was in the middle of applying to hundreds of jobs and waiting for interviews particularly, one with the help from LT Gov Polito. Gayle Lang mentioned that 1A Auto would consider creating a Director of Quality position if Mr. Tran come onboard full time. Nothing was guaranteed. Mr. Tran accepted 1A Auto full time in September after the position that LT Gov Polito recommended me to fell through. Also, the Director position never was created. The prosecution misinterpreted the evidence, finding a narrative of waiting for PUA to end before accepting the full time.

15. Mr. Tran denies committing wire fraud, because working part-time was a condition that was eligible for PUA.

16. Mr. Tran did not certify falsely. He merely marked the boxes directed by Jessica Muradian until he was full-time employed.

17. Mr. Tran marked off boxes accurately until he was working full-time. He maintains that the jury disagreed with the notion that obtaining PUA and working part-time was fraudulent as the Jury found no verdict on the first 5 wire fraud charges.

18. The DUA ceased PUA payments because the DUA could not substantiate employment, which was the same reason Mr. Tran was denied regular employment.

19. DUA only needed the W2 and paystubs to substantiate employment and for eligibility and payout. Mr. Tran did not need to submit anything else for eligibility and payout (leaving the alleged misrepresentations gratuitous and superfluous).

The Government did not show the original letter except for the revised job offer letter from Mr. Tran's sister. The original letter was dated 12/29 after Mr. Tran's election loss. The revisions were consistent with using it to negotiate for other employment offers especially the Director of Quality position mentioned by 1A Auto. This was similar to the position offered in Mrs. Martin's job letter. The amount was consistent with what I was earning in the State Senate. Mr. Tran submitted additional documents to show that he was looking for employment. The letter had no bearing on his eligibility and payout, those were determined by the W2 and paystubs for substantiation.

20. There was nothing false about Mr. Tran's children still learning remotely, and its impact on Mr. Tran's ability to seek employment was properly submitted. Part time consulting is not employment by a company, nor is it accurate to call it self-employment since there was no registered business. To this day, Mr. Tran has no idea how to accurate describe the situation other than helping 1A Auto with project management.

21. (i) Mr. Tran and his sister converse many times about a role and responsibilities. That is part of the application. Mr. Tran also applied, it is undisputed, to hundreds of jobs. This statement was not false. (ii) Mr. Tran several conversations with his sister about resume and past employments as well as submitting his resume to hundreds of job listings. (iii) Mr. Tran's sister, who hires for her company, performs the HR role and is therefore HR. (iv.) Same as iii.

Mr. Tran did not have to disclose this to the interview and it was irrelevant to his eligibility and payout. All DUA had wanted was the W2 and paystubs.

22. Nothing was concealed because they were not asked and were not topics of the interview. The interview was to substantiate Mr. Tran's W2 and paystubs from the State Senate only.

23. The changes were made to reflect the facts and consistent with using it for job negotiation, but Mr. Tran decided to submit it as additional documents. It is worth noting that the time frame of the text was the same time frame when Mr. Tran was notified by 1A Auto that it was considering a Director of Quality position.

24. DUA made it clear that the reversal of the decision was solely based on employment substantiation with the W2 and paystubs.

25. PUA payments ended on September 9, 2021. September 9th was the same day that Mr. Tran was scheduled for the job interview that Lt. Governor Polito recommended. This was the position Mr. Tran was hoping for but did not get. September 20th saw Mr. Tran accepting a full time position with 1A Auto. The Director of Quality position was never created. Mr. Tran's position was eliminated in 2024. Mr. Tran is currently helping with various projects.

26. Mr. Tran denies that the certifications were fraudulent. Nothing on the website or in the process indicated that any other entity, besides the Commonwealth, operated PUA.

31. The rents were: 2020=$28,200  2021=$31,200  2022=$31,200.

32. (ii) 2018 and 2019 also showed that Mr. Tran was wrongly filing the single property as two with everything else as two. Mr. Tran fixed these errors along with following advice from an online forum on tax filing for investment property.

33. (i) $13,444 (one unit) was not reported because mortgage payments totaled $17,523.73

(ii) Only $15,600 (one unit) was not reported, NOT $16,555 because mortgage payments totaled $15,818.52

(iii) $15,600 (one unit) was not reported because the mortgage totaled $15,829.80.

34. 2021 Rent underreported was $15,600

35. Nobody ever read these things and electronically filed.

37. Consult was new to Mr. Tran. The Title was recommended by 1A Auto HR based on the service Mr. Tran provided. The template for the invoices was downloaded from the internet.

39. At the time Mr. Tran had no knowledge what a 1099-NEC form was. The company had never produced and sent the form to Mr. Tran or the IRS. TaxAct software proceeds with the boxes checked based on the forms Mr. Tran had, therefore TaxAct never asked about consultant work or independent work. Mr. Tran received a W2 from 1A Auto and that was filed. Once Mr. Tran learned about he 1099-NEC form, Mr. Tran immediately contacted 1A Auto for the form and he amended tax year 2021. 1A Auto confirmed the form was never produced to Mr. Tran or the IRS. The IRS did not have the form and therefore they did not audit Mr. Tran.

40. Mr. Tran denies that he underreported for 2017-2019. These years were not in the indicted or submitted to the jury. There was no finding made. And Mr. Tran cannot be punished for conduct that he was not convicted of, was not within the indictment, and he had no notice that he was in jeopardy of. These acts are also beyond the statute of limitations. Like the other loss objections, these may not be used against Mr. Tran.

41. At the trial, the Court instructed the prosecutors and jury that the rental expense issues were not part of the indictment and irrelevant. The jury made no finding upon them and was not asked to—the theory they were given by the government was the underreporting of the rental income. Like the other loss objections, these may not be used against Mr. Tran.

42. Objected as above.

43. Like with the other loss calculations, this includes inapplicable monies. Specifically this includes monies from counts which the jury did not reach a verdict on, as to DUA. It includes years outside the indictment and statute of limitations as to the IRS. The IRS loss should be $23,327.

44. There was no obstruction of justice. As objected herein, this enhancement is unconstitutional and unfair.

45. This is not relevant. The agents violated Mr. Tran's right to counsel. There was no false statement and which statement is alleged to be false is not identified with peculiarity.

46. The Defendant appreciates that the Probation office did not use Mr. Tran's speech against him. However, he objects to the inclusion and review. It chills free speech as his political opinions cannot be held against him constitutionally nor can he be punished for his speech.

49. The Defendant denies perjury. The prosecution did not provide any proof that the call-in system at DUA automatically records when a caller dials-in. Mr. Tran testified based on his recollection, whether it was Debra Lerner or Jessica Muradian. Mr. Tran did mention his job search and his sister's job offer. Also this is an offense that the jury was not asked about and did not make a finding.

50. The Defendant maintains that he accepted responsibility. He disclosed to the probation department the tax issue in discussion, and the fact that the returns were amended promptly. Mr. Tran also disclosed that the would have worked to rectify the issues, had anyone contact him in the normal IRS course of audit notices or procedure.

56. Mr. Tran again disputes the money calculation amount. Compare $1,255 x 25 (counts) = $31,375 with $1,255 x 20 (counts) = $25,100.

62. Previously objected.

82. Pending charges, not proved beyond a reasonable doubt to a jury, are for sentencing purposes constitutionally irrelevant.

97. The Defendant's daughter's name is spelled Madilyn (no "e").

99. In 1999, Mr. Tran's moved to 99 Harrison Ave in Fitchburg that is now the rental property. The move to Tibbett Circle was in 2002.

121. The Defendant disputes the offense level.

128  The Defendant disputes this Zone rating and ineligibility for probation.

133. The Defendant disputes this as in 56.

**<u>First Amendment</u>**

The Government, in its sentencing submission, is unconstitutionally attempting to punish Mr. Tran for his first amendment political speech. It is, in the first place, highly ironic that the Government complains of publicity (and has several times) yet it started the matter and routinely publicized Mr. Tran's case both directly, in press conferences, and indirectly through leaks to the Boston Globe.

Even were Tran's political statements not clearly protected, the Government openly seeks to condemn Mr. Tran's speech because they do not like its content. *Gvt. Sentencing Memorandum*, at 13 ("Tran made…inflammatory and incredible statements that had no basis in fact. His outrageous claims ring hollow with no evidence backing up his claims against the investigators and prosecutors.")

> [T]here are some purported interests — such as a desire to suppress support for a minority party or an unpopular cause, or to exclude the expression of certain points of view from the marketplace of ideas — that are so plainly illegitimate that they would immediately invalidate the rule. The general principle that has emerged from this line of cases is that the First Amendment forbids the government to

> regulate speech in ways that favor some viewpoints or ideas at the expense of others.

City Council of LA v. Taxpayers for Vincent, 466 U.S. 789, 804 (1984). *See Also* RAV v. St. Paul, 505 U.S. 377, 391 (1992) ("The First Amendment does not permit St. Paul to impose special prohibitions on those speakers who express views on disfavored subjects"); Rosenberger v. University of Virginia, 515 U.S. 819, 829 (1995) ("When the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant.").

**The Government is overzealous in its pursuit**

For example, the Government argues that "Tran claimed that DUA employee Debra Lerner gave him permission to work while collecting PUA, a proposition that Lerner unequivocally repudiated on the witness stand." *Gvt Sentencing Memo*, at 17. Here it blends the Defendant's contention that an off-the-record conversation occurred (which Lerner denied) with unrelated contentions that PUA allows him to work. In like turn, the Government also seeks to punish Mr. Tran's speech because they don't like. *Id. at* 17-18 (Government finding fault in Mr. Tran's criticism of the Government prosecution).

**A Just Sentence, balancing the Seriousness of the Offense and the culpability of the Defendant, and the prospects of rehabilitation is Probation**

The Statutory factors weigh in favor of granting Mr. Tran a sentence of probation with a period of home confinement.

>> Respectfully Submitted,
>>
>> Dean Tran
>> By his Attorney
>> /S/ Michel Walsh

Michael Walsh<br>
BBO 681001<br>
Walsh & Walsh LLP<br>
PO Box 9<br>
Lynnfield, MA 01940<br>
617-257-5496<br>
Walsh.lynnfield@gmail.com

**Certificate of Service**

I, Michael Walsh, certify that I have served a copy of this filing to all ECF/CM filers on this 17th day of January, 2025.

/S/ Michael Walsh